IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-2085-CMA-BNB

MEL BOMPREZZI,

Plaintiff,

v.

GRAHAM HOFFMAN, Dr.,
JULIE MEEKER, Dr.,
LISA TOEPP, Dr.,
POUNDS, Dr., and
DeCUARDO, Dr.,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the plaintiff's **Preliminary Injunction Request** [Doc. #28] (the "Motion"). I respectfully RECOMMEND that the Motion be DENIED.

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the San Carlos Correctional Facility. He filed his Prisoner Complaint on August 14, 2013 [Doc. #4] (the "Complaint"). At that time, he was housed at the Colorado Mental Health Institute in Pueblo, Colorado ("CMHIP"). The Complaint asserts three claims for relief. Claim Two and defendants Judge Alexander and Dr. Kaprivnikar have been dismissed. The remaining claims

have been construed to allege violations of the plaintiff's Fourteenth Amendment due process rights [Doc. #9]. The Complaint contains the following pertinent allegations:

    1. On June 10, 2013, defendant Dr. Hoffman "of the Colorado Mental Health Institute at Pueblo" obtained a court order to involuntarily medicate the plaintiff for six months. Defendants Drs. Pounds, DeQuardo[1], Meeker, and Toepp have also involuntarily medicated the plaintiff "in the past." *Complaint*, p. 4.[2]

    2. "Being forced to take drugs against my will makes me very angry. It also makes me depressed. It places me in an adversarial relationship with state doctors. It makes me frustrated with America. I absolutely do not want to take antipsychotic medications against my will." Id.

The plaintiff seeks a preliminary injunction. He does not specify the relief sought. Construing the Motion liberally, as I must, I find that the plaintiff is seeking an order preventing the defendants from administering psychotropic medications against his will.

Injunctive relief is a drastic remedy to be granted only in cases where the right to relief is clearly established. Goldammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964). The burden is on the movant to establish his right to the relief requested. Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975). To obtain a preliminary injunction under Rule 65(a), the plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public

---

[1] The correct spelling of the defendant's name is DeQuardo. *Motion*, p. 1, n.1.

[2] I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980). The plaintiff's right to relief must be clear and unequivocal. Penn, 528 F.2d at 1185.

The following kinds of preliminary injunctions are disfavored: (1) those that disturb the status quo; (2) those that are mandatory as opposed to prohibitory; and (3) those that afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.³ SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096 1098-99 (10th Cir. 1991). "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004). The plaintiff seeks all three types of injunctive relief. Therefore, he "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms." Id. at 976.

**Substantial Likelihood of Success on the Merits**

The plaintiff's remaining claim is "a § 1983 claim against the Defendants for deprivation of his Fourteenth Amendment due process rights based on the administration of involuntary psychotropic medications." *Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge* [Doc. #9], p. 3. The Due Process Clause of the Fourteenth Amendment

---

³Mandatory injunctions "affirmatively require the nonmovant to act in a particular way." SCFC, 936 F.2d at 1099. Injunctions that disturb the status quo alter the parties existing relationship. Id. at 1100. "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." Id. (emphasis in original).

guarantees due process when a person may be deprived of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'"  Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997).  Thus, before determining whether a plaintiff's due process rights have been violated, the court must determine whether the plaintiff has a liberty interest.

An individual "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."  Washington v. Harper, 494 U.S. 210, 221-22 (1990).  However, "[t]he extent of a prisoner's right under the Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement."  Id. at 222.  When an individual is confined in a state institution, individual liberties must be balanced against the interests of the institution in preventing the individual from harming himself or others.  Id. at 222-225.  The involuntary administration of antipsychotic drugs that are prescribed, reviewed, and ordered by a psychiatrist in the offender's medical interests, given the legitimate needs of the offender's institutional confinement, will meet the demands of the Due Process Clause.  Id. at 222.

The Motion is prolix and rambling.  The plaintiff does not provide any meaningful discussion regarding the Due Process Clause or his likelihood of success on the merits of his claim.  Indeed, it is impossible to discern the plaintiff's diagnosis from the 16-page Motion.  The plaintiff states that he has received the following diagnoses from psychiatrists: "erotomanic delusional"; narcissistic personality disorder; schizophrenia-disorganized type; and

schizophrenia-delusional type. *Motion*, pp. 2-3.  The plaintiff disagrees with these asserted diagnoses, however, stating:

> I personally diagnose myself with Post Traumatic Stress Disorder. I have diagnosed myself this based upon World War One Veterans who suffered noises sensitivity. From Thanksgiving 1997 until 2000, I suffered extreme periods of sleep deprivation. The first sleep deprivation started with low flying police helicopters in Los Angeles. This first bout of sleep deprivation lasted for five to seven days straight where I got not one wink of sleep. This ended with a masturbation. Long periods of sleep deprivation result in penile arousal. Masturbation . . . under severe sleep deprivation makes one nervously sensitive to noises.

*Motion*, pp. 3-4.  The plaintiff's self-diagnosis is neither supported by evidence nor convincing.

It is unclear from the Motion whether the plaintiff is suffering from a mental disorder which is likely to cause harm if not treated.  In addition, it is unclear who prescribed the medications and whether the named defendants are administering the medications at issue.

The plaintiff complains that the decisions to medicate him against his will must be made after a judicial hearing with "an unbiased jury panel," a court reporter, public access, and "a burden of proof of clear and convincing evidence." Id. at pp. 8-10.  The Supreme Court has held that due process does not require a judicial hearing prior to treating an inmate with antipsychotic drugs against his will:

> The Due Process Clause does not require a judicial hearing before the State may treat a mentally ill prisoner with antipsychotic drugs against his will. [The plaintiff's] not insubstantial liberty interest, when considered with the government interests involved and the efficacy of the particular procedural requirements, is adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge. It cannot be assumed that a mentally disturbed patient's intentions, or a substituted judgment approximating those intentions, can be determined in a single judicial hearing apart from the realities of frequent and ongoing medical observation. Nor can it be ignored

5

> that requiring judicial hearings will divert scarce prison resources from the care and treatment of mentally ill inmates. Moreover, the risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals.

Washington, 494 U.S. at 211-212.

The plaintiff has failed to meet his heavy burden to make a strong showing that there is a substantial likelihood he will eventually prevail on the merits. For this reason alone, the plaintiff's request for injunctive relief should be denied. Nova Health Systems v. Edmonson, 460 F.3d 1295, 1299 (10th Cir. 2006) (affirming district court's denial of preliminary injunction without reaching other three factors because plaintiff failed to show a substantial likelihood of success on the merits).

### Irreparable Harm

A presumption of irreparable injury exists where constitutional rights are infringed. Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001). The plaintiff, however, has failed to establish a likelihood of success on his due process claim. As a result, he is not entitled to a presumption of irreparable injury.

"Determining whether irreparable harm exists can be a difficult and close question." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1263 (10th Cir. 2004). "[T]he concept of irreparable harm does not readily lend itself to definition, nor is it an easy burden to fulfill. In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial." Id. (internal quotations and citations omitted).

The plaintiff complains that he is being forced to take Zyprexa and Ability. *Motion*, p. 4. He claims that Zyprexa can cause pancreatic cancer, weight gain, and "high cholesterol and high

lipids in the blood" which "lead to arterio-sclerosis, which can lead to heart attack." He states that "[s]evere weight gain may lead to heart attacks and Type II diabetes." He claims that he has gained 70 pounds over seven years, and his blood work shows that he has high cholesterol from taking Zyprexa. Id. at p. 6. He further states that Abilify can cause uncontrollable muscle movements which may become permanent. More generally, he states that antipsychotic drugs make him more sensitive to noises, and they "work on adrenaline suppression, dopamine suppression, and sympathetic nervous system suppression." Id. at p. 7. In addition, the plaintiff states summarily that "the side effects of brain akathesia are killing me," Expedited Ruling Request [Doc. # 42] at p. 1, without further explanation.

The plaintiff does not provide any evidence to show that the antipsychotic drugs are unnecessary or have caused him to suffer symptoms other than weight gain and high cholesterol. Injunctive relief is issued "to prevent existing or presently threatened injuries." Connecticut v. Massachusetts, 282 U.S. 660, 674 (1931). Such relief "will not be granted against something merely feared as liable to occur at some indefinite time in the future." Id. In addition, the Supreme Court has recognized that although antipsychotic drugs can cause undesirable side effects, "there is little dispute in the psychiatric profession that proper use of the drugs is one of the most effective means of treating and controlling a mental illness likely to cause violent behavior." Washington, 494 U.S. at 226.

The plaintiff also claims that he has been "psychiatrically stereotyped" which has resulted in permanent stigmatization, inability to own a firearm, and being labeled as legally incompetent in criminal proceedings. Id. at pp. 7-8. These alleged harms are not the result of being medicated against his will; they are the alleged consequences of his diagnoses.

**Conclusion**

The plaintiff has failed to meet his burden to establish a substantial likelihood of success on the merits and irreparable injury unless the injunction issues. I need not address the remaining requirements for injunctive relief. Nova Health Systems, 460 F.3d at 1299. Accordingly,

I respectfully RECOMMEND that the plaintiff's Preliminary Injunction Request [Doc. #28] be DENIED.[4]

Dated October 28, 2014.

                                      BY THE COURT:

                                      s/ Boyd N. Boland
                                      United States Magistrate Judge

---

[4]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).