**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-02085-CMA-NYW

MEL BOMPREZZI,

      Plaintiff,

v.

DR. GRAHAM HOFFMAN,
DR. JULIE MEEKER,
DR. LISA TOEPP,
DR. POUNDS, and
DR. DeQUARDO,[1]

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Nina Y. Wang

      This matter comes before the court on the Motion for Summary Judgment filed by

Defendants Dr. Graham Hoffman, Dr. Julie Meeker, Dr. Lisa Toepp, Dr. Pounds, and

Dr. DeQuardo [#62] on February 11, 2015 ("Motion for Summary Judgment" or

"Motion").  The Motion for Summary Judgment was referred to this Magistrate Judge for

Recommendation pursuant to 28 U.S.C.§ 636(b)(1)(B), the Order of Reference dated

September 13, 2013 [#13], the Reassignment dated February 9, 2015 [#61], and the

Memorandum dated February 12, 2015 [#68].  After carefully considering the Motion

---

[1] Defendants have noted to the court that "Dr. DeCuardo" is a misspelling, and that this particular Defendant's last name is properly spelled "DeQuardo." [#17 at 1].  When not quoting Plaintiff's pleadings, the court hereinafter uses the correct spelling indicated by Defendants in referring to Dr. DeQuardo.

and related briefing, relevant portions of the case file, and the applicable case law, I respectfully RECOMMEND that Defendants' Motions for Summary Judgment be GRANTED for the reasons set forth below.

## PROCEDURAL HISTORY

### I.   Relevant Prior Litigation

On December 21, 2011, while a prisoner at the San Carlos Correctional Facility ("SCCF") operated by the Colorado Department of Corrections ("CDOC"), Plaintiff Mel Bomprezzi (also "Plaintiff" or "Mr. Bomprezzi") filed a complaint in this District against Dr. Joan Kaprivnikar ("Defendant Kaprivnikar" or "Dr. Kaprivnikar") of the CDOC and the CDOC itself. [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #1]. The complaint in that action alleged that Dr. Kaprivnikar "forcefully administer[ed] antipsychotic poisonous drugs" against Plaintiff's will, which Plaintiff averred was a form of "cruel and unusual punishment" giving rise to the claims for constitutional violations he sought to assert pursuant to 42 U.S.C. § 1983.   [*Id.* at 1-4].   On February 7, 2012, pursuant to court order, Plaintiff filed an amended prisoner complaint raising essentially the same allegations. [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #11].   On March 12, 2012, Senior Judge Babcock, on review pursuant to 28 U.S.C. § 1915(e)(2)(B), dismissed the CDOC as an improper Section 1983 defendant. [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #11].

On May 14, 2012, Dr. Kaprivnikar moved to dismiss Mr. Bomprezzi's complaint pursuant to Fed. Rule Civ. P. 12(b)(6) on the ground that it failed to state a cognizable claim for relief. [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #44].   On May 13, 18, 2013, Judge Blackburn adopted Magistrate Judge Hegarty's recommendation to

dismiss all claims raised, with the exception of Plaintiff's substantive due process claim under the Fourteenth Amendment. [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #73, #98]. In doing so, the court liberally construed Plaintiff's complaint to assert claims under the Eighth Amendment (for cruel and unusual punishment), the Thirteenth Amendment (for involuntary servitude), and the Fourteenth Amendment (for violation of Plaintiff's due process rights). [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #73].

On September 9, 2013, Dr. Kaprivnikar moved for summary judgment on Plaintiff's sole remaining claim alleging a violation of his substantive due process rights. [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #87]. On January 22, 2014, the court approved and adopted Magistrate Judge Hegarty's recommendation that summary judgment be granted, finding that "viewing the undisputed facts in the record in the light most favorable to Mr. Bomprezzi, those facts do not support the substantive due process claim of Mr. Bomprezzi." [*Bomprezzi v. Kaprivnikar*, 1:11-cv-03344-REB-MEH, #93, #99].

## II.   Plaintiff's Operative Complaint and Remaining Claims

On August 5, 2013, as his case against Dr. Kaprivnikar remained pending, Mr. Bomprezzi filed his original complaint in the instant litigation. [#1]. On August 14, 2013, pursuant to court order directing correction of certain procedural deficiencies, Plaintiff filed his amended and operative Complaint. [#4] (the "operative Complaint").[2]

---

[2] While Mr. Bomprezzi does not title this second complaint an "operative Complaint," the court will refer to it as such to avoid any confusion with respect to the original Complaint filed in this action.

According to the operative Complaint, Defendant "Dr. Graham Hoffman of the Colorado Mental Health Institute of Pueblo (CMHIP) took me to the Pueblo County District Court to force involuntary medications upon me for six months." [*Id.* at 1].[3] Plaintiff alleged that "Pueblo Judge Alexander" entered an order allowing the involuntary administration of medication to Plaintiff for a period of six months. [*Id.* at 3]. Plaintiff further alleged that "Dr. Pounds and Dr. DeCuardo" (employees or contractors of the CMHIP allegedly working under color or state law) and "Dr. Joan Kaprivnikar, Dr. Julie Meeker, and Dr. Toepp" (employees or contractors SCCF allegedly working under color of state law) had "also involuntarily medicated" Plaintiff in the past. [*Id.* at 2-3].

According to Plaintiff's operative Complaint, "Dr. Hoffman's and Judge Alexander's use of the Colorado 27-10 civil statutes to impose involuntary medications" on Plaintiff is "a form of slavery." [*Id.* at 4]. Plaintiff also alleges that the "side effects of antipsychotic medications are cruel and unusual punishment especially when they are court ordered involuntary prescriptions." [*Id.* at 7]. Plaintiff's operative Complaint sought a ruling that "involuntary medications before and during a trial" constituted a form of "involuntary intoxication," providing an affirmative defense at trial. [*Id.* at 6]. In his Request for Relief, Plaintiff further states that he requests that "involuntary medications be ruled as slavery, involuntary intoxication, and cruel and unusual punishment," and seeks an injunction to prevent further involuntary medication prior to trial. [*Id.* at 9; #52 at 2; #53]. Read liberally, the court interpreted Mr. Bomprezzi's request for relief to include a preliminary injunction barring Defendants from administering psychotropic

---

[3] For the sake of simplicity, in referencing Plaintiff's pleadings, the court cites to the page number as assigned by the court's CM/ECF system as appropriate in this Recommendation.

medications involuntarily, at any time.  [#4 at 4-5, 9; #52, #53].  Mr. Bomprezzi does not seek any monetary damages. [*Id.*].

On September 6, 2013, Senior Judge Babcock conducted an initial review of Plaintiff's Complaint, and dismissed Judge Alexander as a Defendant, based on the doctrine of absolute judicial immunity. [#9 at 3].   The court also dismissed Plaintiff's claims against Defendant Dr. Kaprivnikar, because Plaintiff brought an identical claim against him in Case No. 11-cv-03344-REB-MEH."   [*Id.* at 4].   The court "liberally construe[d] the Prisoner Complaint as asserting a § 1983 claim against the [remaining] Defendants for deprivation of his Fourteenth Amendment due process rights based on the administration of involuntary psychotropic medications" and found that, on the record before it, that claim was not subject to *sua sponte* dismissal on the pleadings pursuant to 28 U.S.C. § 1915(e)(2)(B).  [*Id.* at 3].

On November 8, 2013, the remaining Defendants in this case (Dr. Hoffman, Dr. Meeker, Dr. Toepp, Dr. Pounds, and Dr. DeQuardo) moved to dismiss Plaintiff's Complaint in its entirety for failure to exhaust administrative remedies, and also moved to dismiss any claim Plaintiff's operative Complaint could be construed to assert under the Eighth and Thirteenth Amendments.  [#17].   On May 6, 2014, Magistrate Judge Boland issued a recommendation that the motion to dismiss be denied, rejecting Defendants' argument that Mr. Bomprezzi was precluded from proceeding because he had failed to exhaust his administrative remedies, and finding in light of the court's prior Order [#9] that Plaintiff's Complaint asserts a due process claim that was unaddressed by the motion to dismiss.  [#37].  On June 2, 2014, the Honorable Christine M. Arguello adopted Judge Boland's recommendation as the court's order, leaving Plaintiff's

allegation that his Fourteenth Amendment due process rights were violated as his sole claim.  [#44].

### III.    Defendants' Motion for Summary Judgment and Plaintiff's Response

On February 11, 2015, Defendants filed the instant Motion for Summary Judgment, which included a lengthy "Statement of Facts" consisting of 68 numbered paragraphs with supporting citations to administrative, correctional, and medical records pertinent to Plaintiff's alleged claims.  [#62].  As discussed below, many of the factual assertions relate to actions that arose after Plaintiff's operative Complaint, and are described nowhere in that pleading.  [#4].    On March 2, 2015, Plaintiff filed a five-sentence response, asserting that all the "affidavits" submitted by Defendants are "blatant lies and cover ups," and "[m]ore importantly, they are not sworn affidavits." [#70].  That same day, Plaintiff filed a request for a two week continuance to respond to the Motion for Summary Judgment.  [#71].  The court subsequently granted Plaintiff an extension of up to and including "June 4, 2015 to file a response to Defendants' Motion for Summary Judgment," expressly noting that no "further extensions shall be granted." [#78].    As of the date of this Recommendation, no further response or request for extension has been filed by Plaintiff.

### ANALYSIS

### I.    Standard of Review

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's

function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.; Carey v. U.S. Postal Service, 812 F.2d 621, 623 (10th Cir. 1987).  Where the record taken as a whole is so one-sided that a rational trier of fact could not find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

In Section 1983 cases, the plaintiff ordinarily bears the burden of proof on all elements of the "constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).  Therefore, a defendant may support its motion for summary judgment on an issue by arguing that the record lacks sufficient evidence requiring a trial as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986).  Moreover, the moving party need not support its motion "with affidavits or other similar materials negating the opponent's claim," provided that the movant points to the absence of sufficient evidence in the record to support the nonmovant's claim.  *Id.* at 323; *accord. Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir.2007) ("If, however, the moving party does not bear the

burden of persuasion at trial, it need not negate the nonmovant's claim.  Such a movant may make its *prima facie* demonstration by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim.") (citation omitted).  Once such a demonstration has been made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

In considering this instant motion, the court views all evidence in the light most favorable to Plaintiff.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).  However, Mr. Bomprezzi must establish, at a minimum, an inference of the presence of each element essential to the case.  *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994) (citation omitted).  When, as here, the moving party does not bear the ultimate burden, Plaintiff "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  Conclusory statements based merely on speculation, conjecture, or subjective belief do not constitute competent summary judgment evidence.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," including at summary judgment.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the court cannot be a *pro se* litigant's advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  "Although [o]ur summary judgment standard requires us to view the facts in the light most favorable to the non-moving party[,] it does not require us to make unreasonable inferences in favor

of the non-moving party." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs*, 117 Fed. App'x. 64, 69 (10th Cir. 2004)).

Mr. Bomprezzi's failure to substantively respond to the summary judgment motion is not by itself grounds for entry of judgment in the moving party's favor. *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).  However, the court may accept the undisputed facts offered by Defendants as true.  *See* Fed. R. Civ. P. 56(e)(2) (if party fails to "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes" of the summary judgment motion).  Before doing so in this case, this court has reviewed the exhibits submitted by Defendants to confirm that Defendants' factual assertions are properly supported. *Lammle v. Ball Aerospace & Techs. Corp.*, Case No. 11-cv-3248-MSK-MJW, 2013 WL 4718928, *1 (D. Colo. Sept. 1, 2013).

## II.    Recommended Findings of Fact

In light of the standards as set forth above, the undersigned Magistrate Judge makes the following factual findings.

The Colorado Department of Corrections ("CDOC"), at all times relevant to the instant case, has had regulations concerning the involuntary administration of psychotropic medications to incarcerated offenders.  [#62 at ¶¶ 1-2].  These regulations required and continue to require a showing that the offender suffers from a mental disorder, that the disorder constitutes a serious threat of harm to the offender or others, and/or that the offender is gravely disabled, and that the treatment is in the medical interest of the offender.  [*Id.* at ¶ 3 & 62-1, 62-2 (attaching versions of AR 700-23(IV)(A)(1) as existed at times relevant to Plaintiff's claims)].

Absent emergency circumstances, a due process hearing is required before any medication is involuntarily administered. [*Id.* at ¶¶ 4-8]. The due process hearing occurs before an Involuntary Medication Hearing Committee, which includes mental health clinicians. [*Id.* at ¶ 10]. Advance notice of at least 24 hours is provided to the offender. [*Id.* at ¶ 9]. Prior to the hearing, the offender's treating clinician prepares a comprehensive evaluation documenting, *inter alia*, the offender's DSM-IV diagnosis, and the grounds underlying the clinician's view that the offender's condition constitutes a serious threat of harm to the offender or others, and/or that the offender is gravely disabled. [*Id.* at ¶ 11]. This evaluation is provided to the offender with the administratively required notice at least 24 hours in advance of the due process hearing. [*Id.* at ¶ 12].

At the due process hearing, the offender is provided with the opportunity to be present and heard, and to cross-examine any witnesses called to testify by the incarcerating facility. [*Id.* at ¶ 13]. A competent representative adviser not currently involved in the offender's current treatment is appointed on behalf of the offender to assist the offender during the hearing process. [*Id.* at ¶¶ 14-15]. The decision reached by the Involuntary Medication Hearing Committee at the due process hearing is appealable in writing. [*Id.* at ¶ 16].

### A.   May 13, 2013 Involuntary Medication Order

On May 8, 2013, while Mr. Bomprezzi was in custody at SCCF, Andrea Bonino executed a Request for Involuntary Medication Hearing. [*Id.* at ¶ 17 & #63 at 22-28]. On April 22, 2013, in anticipation of the hearing, psychiatrist Lisa Toepp provided an updated report regarding Plaintiff's lengthy mental health history, and the then-present

grounds justifying continued placement on involuntary medication. [#62 at ¶ 20 & #63 at 12-21]. In Dr. Toepp's opinion, Mr. Bomprezzi continued to have no insight into his condition or his continued need for certain psychotropic medications, was not amenable to taking them voluntarily, and would be pose a danger to others absent continued involuntary administration. [#62 at ¶¶ 21-23 & #63 at 21].

On May 10, 2013, Mr. Bomprezzi was provided with a copy of a Notice of Involuntary Medication Hearing, which informed Mr. Bomprezzi of, among other things, his rights to be present at the hearing, to be represented, to present evidence, and to cross-examine witnesses. [#62 at ¶¶ 26-27 & #63 at 11]. Three days later, the hearing took place as scheduled in Mr. Bomprezzi's presence, and the Involuntary Medication Hearing Committee determined that involuntary psychotropic medication administration was warranted for a period of 180 days (the "May 13, 2013 Involuntary Medication Order"). [#62 at ¶¶ 25-29]. Mr. Bomprezzi indicated his desire to appeal this determination during the hearing, but before a SCCF employee was able to provide Mr. Bomprezzi with a copy of the written appeal form the following day, Mr. Bomprezzi had already been moved to the Colorado Mental Health Institute at Pueblo ("CMHIP") after a finding of incompetence. [#62 at ¶ 30 & #63 at 3; #64 at 1].

## B.    CMHIP Involuntary Medication Administration Hearing Proceedings and Order

While Mr. Bomprezzi was placed at the CMHIP, the Pueblo County Attorney's Office filed a Petition for Review of Refusal of Treatment with the Pueblo County District Court pursuant to C.R.S. § 16-8.5-112(1) (the "Petition for Review"). [#62 at ¶ 31 & #64 at 1]. In the affidavit submitted in support of the Petition for Review, Defendant Dr.

Graham Hoffman opined that Mr. Bomprezzi's mental illness made Mr. Bomprezzi a danger to himself and others. [#62 at ¶ 33 & 64 at 4].

On June 10, 2013, the Petition for Review was granted by the Pueblo County District Court (the "June 10, 2013 Incompetency Order"). [#62 at ¶ 34-35 & 64 at 5-6]. The Pueblo County court found that Plaintiff was incompetent to participate in decisions regarding his mental health. [*Id.*]. The court also found that "without the recommended medications there will be a progressive deterioration and prolonged hospitalization," and that there was "no less intrusive method of treatment available." [*Id.*]. Mr. Bomprezzi was represented at the hearing, and advised of his right to appeal the state court's decision. [*Id.*]. It is this June 10, 2013 determination and the May 13, 2013 Involuntary Medication Order that form the core of Mr. Bomprezzi's operative Complaint [#4 at 4-5]. On September 13, 2013, Mr. Bomprezzi left CMHIP and returned to the SCCF. [#62 at ¶ 36].

### C.    Additional Involuntary Medication Hearings

Defendants also offer facts related to other instances in which Mr. Bomprezzi has been subject to involuntary medication orders resulting from involuntary medication hearings held on November 4, 2013; April 28, 2014; and December 28, 2014. [#62 at ¶¶ 36-68]. While Plaintiff indicated in his operative Complaint that he brought the action against "any future state psychiatrist, who also decides to involuntarily medicate me in the future," [#4 at 4], these other instances are not reflected in Plaintiff's operative Complaint. [#4]. Nor does it appear that any of the clinicians who either initiated these hearings or provided reports for them are named Defendants. [*Id.*]. Therefore, this court declines to recount the facts of additional involuntary medical orders arising since the

filing of this instant action in any detail, because they do not appear to be properly before the court and Plaintiff arguably has not had the opportunity to address the arguments raised in the first instance by Defendants.[4]

## ANALYSIS

### I.   The Court Lacks Subject Matter Jurisdiction as to any Claim Related to Forced Medication at CMHIP

As an initial matter, though not raised by Defendants, the court considers its own subject matter jurisdiction.  *See State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1270–71 (10th Cir. 1998) ("[I]t has long been recognized that a federal court must, *sua sponte,* satisfy itself of its power to adjudicate in every case and at every stage of the proceedings.") (citation and quotation omitted).  Article III of the Constitution limits the jurisdiction of this court to live "cases and controversies." U.S. Const. art. III, § 2, cl. 1.  The mootness doctrine provides that although there may be an actual case and controversy at the inception of an action that establishes standing, a federal court must dismiss the action for want of jurisdiction when events outside the litigation make relief impossible.  *See Jordan v. Sosa*, 654 F.3d 1012, 1023, 1027 (10th Cir. 2011) ("*Jordan*") (recognizing  that where "the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief").   Under constitutional mootness, a case that is presented to a

---

[4] For each of the other Involuntary Medication Orders identified by Defendants arising from his time since his return to SCCF, Defendants assert that a mental health clinician submitted a Request for an Involuntary Medication Hearing; a separate clinician issued a report recommending that Mr. Bomprezzi's involuntary medication regime be continued for an additional 180 days; Mr. Bomprezzi was notified of such hearings; and at the end of such hearing, an additional 180 of involuntary medication administration was ordered.  [#62 at ¶¶ 36-68].

federal court must be definite, concrete, and amenable to specific relief.  *Id.* at 1023 (citing *Fletcher v. United States,* 116 F.3d 1315, 1321 (10th Cir. 1997)).  Even if a case is not constitutionally moot, a court may dismiss a case under the doctrine prudential-mootness if, in its discretion, the court determines that it should withhold relief that it has the power to grant.  *Id.*  Prudential mootness applies in cases like this one, where a plaintiff seeks injunctive or declaratory relief.  *Id.*

In the context of prudential mootness, it is critical to determine whether the plaintiff has named, as defendants, individuals or entities that are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights. *Id.*  When a prisoner transfers from one facility to another, any claims the prisoner might have for injunctive and declaratory relief as against the original facility generally are mooted by the transfer.  *See, e.g.*, *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding in cases where an inmate plaintiff is released, injunctive and declaratory relief mooted because such a judgment "would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him") (citing *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); *McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail")).   An exception to the application of the mootness doctrine is when a plaintiff brings a lawsuit challenging policies that are applied in a generally uniform fashion throughout the prison

system.  *Jordan*, 654 F.R.D. at 1028.  To avoid mootness, the inmate's claim must both challenge a system-wide policy and must name the appropriate defendants that can effectuate effective injunctive and declaratory relief.  *Id.*

Based on this authority, the undersigned Magistrate Judge recommends finding that the court lacks subject matter jurisdiction based on either constitutional or prudential mootness over Plaintiff's claim for a violation of his Fourteenth Amendment due process rights arising from the June 10, 2013 involuntary medication order at CMHIP.  The undisputed facts show that Mr. Bomprezzi is no longer residing at CMHIP. [#62 at 7, ¶ 36]; *see also* [#20 at 2] (letter from Plaintiff listing Centennial Correctional Facility in "Canyon City, Colorado" as address). [#62 at 30, # 63 at ].  It is entirely unclear what relief this court could provide that would have any effect on Mr. Bomprezzi going forward with respect to Defendants Dr. Hoffman, Dr. DeQuardo, and Dr. Pounds, or to any claims that arise from his time at CMHIP. *See Jordan*, 654 F.3d at 1030.

In addition, Mr. Bomprezzi does not challenge the system-wide policy or procedure associated with the involuntary administration of medications.  [#4].  He does not argue that the policy is flawed in any way.  [*Id.*].  In fact, he does not refer to the policy or procedure at all.  [*Id.*].  He does not name as defendants any individuals who can change a system-wide policy or procedure of involuntary medication.  [*Id.*].  He instead appears to argue that its application to him personally violates his constitutional rights, and names the individuals who were purportedly involved with specific episodes of involuntary medication as defendants.  [*Id.*].

Based on the record before it, this court recommends dismissal of any claim arising from Mr. Bomprezzi's time at CMHIP for lack of jurisdiction.[5]

## II.   Analysis of Personal Participation of Defendants Pounds, Meeker, and DeQuardo

Defendants Pounds, Meeker, and DeQuardo also move for summary judgment based on their lack of direct participation in the alleged constitutional violation. [#62 at 11]. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *accord. Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (holding that in Section 1983 action, a plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation).   Supervisory status alone does not create liability; rather, there must be an affirmative link between the constitutional deprivation and the defendant's personal participation.   *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

On the record before the court, there are only the most generalized allegations by Plaintiff that Defendants Dr. Pounds, Dr. Meeker, and Dr. DeQuardo "involuntarily

---

[5] Because Mr. Bomprezzi also challenges the conduct of officials at SCCF based on their involvement in the involuntary administration of psychotropic medication to Plaintiff, the court notes that its finding of mootness applies to only a portion, rather than the entirety, of Plaintiff's Complaint.   While the May 13, 2013 Involuntary Medication Order entered at SCCF has lapsed, the court does not find the portion his claim with respect to it moot because he is currently incarcerated at SCCF, and because it also appears to fit within the narrow exception of conduct "capable of repetition yet evading review" of the mootness doctrine, *i.e.*, "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party [will] be subject to the same action again."   *See McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999) (citing *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998).

medicated" Plaintiff at some point prior to the filing of the operative Complaint in this matter on August 14, 2013.   [#4 at 2-3].   Even if Mr. Bomprezzi stated a cognizable constitutional violation, Defendants have carried their burden in their Motion for Summary Judgment of pointing to an absence of evidence that Defendants Pounds, Meeker and DeQuardo personally participated in such a violation.   And Mr. Bomprezzi cannot simply rely upon unsubstantiated, conclusory statements from his operative Complaint to establish a genuine issue of material fact.   *See Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241-42 (10th Cir. 1990) (in summary judgment context, "the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof") (citation omitted).   Accordingly, I respectfully recommend granting summary judgment in favor of Defendants Pounds, Meeker, and DeQuardo based on lack of personal participation.

## III.    Analysis of Plaintiff's Remaining Due Process Claims

Finally, Defendants also argue that they are entitled to summary judgment because Mr. Bomprezzi's allegations do not amount to a violation of any cognizable rights under the Fourteenth Amendment.   [#62 at 13-19]. The Due Process clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property.   U.S. Const. amend. XIV, § 1.   Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as liberty interests."   *Harper v. Young*, 64 F.3d 563, 564 (10th Cir. 1995) (citation and quotation omitted), *aff'd*, 520 U.S. 143 (1997).

The Supreme Court has held that inmates such as Mr. Bomprezzi possess a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028 (1990). But "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest," or if the inmate suffers from a "grave disability," and certain procedural safeguards (such as a hearing prior to involuntary administration) are followed. *Id.* at 215, 227. The Supreme Court has held an administrative scheme providing for prescription of involuntary medication by a treating psychiatrist whose decisions were to be reviewed by an administrative hearing body including a reviewing psychiatrist to be constitutionally sufficient where the applicable policy also "provide[d] for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses," and where the members of the hearing board were independent from the treating clinician. *Id.* at 233-36. These substantive and procedural due process standards apply to involuntary psychotropic treatment of mental health patients. *Jurasek v. Utah State Hosp.*, 158 F.3d 506 (10th 1998). Even absent a hearing, forced medication may be appropriate in emergency situations where "treatment with [such] medication was medically appropriate and, considering less intrusive alternatives, essential for the sake of [the detainee's] own safety or the safety of others." *Bee v. Greaves*, 744 F.2d 1387, 1395 (10th Cir. 1984).

The court first turns to whether Defendants have met their burden in pointing to an absence of evidence that any Defendant violated Plaintiff's due process rights in seeking and/ or acting pursuant to the May 13, 2013 Involuntary Medication Order.[6]  If so, the court then turns to the question of whether Plaintiff has met his burden of providing competent evidence showing a triable issue of material fact.

As noted by Defendants with citation to pertinent record materials, prior to the May 13, 2013 involuntary medication hearing, Mr. Bomprezzi was provided with a Notice informing him of his rights in connection to the hearing, including Mr. Bomprezzi's right to be represented, to present evidence, and to cross-examine witnesses.  [#62 at ¶¶ 26-27 & #63 at 11].   Mr. Bomprezzi's treating physician Dr. Toepp, in the report she tendered to the Involuntary Medication Hearing Board, specifically found not only that the involuntary administration of psychotropic medications was in Plaintiff's own interests, but also that Plaintiff would pose a danger to others absent continued involuntary administration.  [*Id.*].   In turn, all three members of the Involuntary Medication Hearing Board were, on the record before the court, mental health professionals (including a physician) independent from Dr. Toepp and from Mr. Bomprezzi's treatment.  [#63 at 2-10].   Each of these professionals found that

---

[6] As noted above, I first determined that this court lacks jurisdiction over any claim raised by the Complaint related to Mr. Bomprezzi's confinement at CMHIP, including any conduct leading or pursuant to the June 10, 2013 Incompetency Order.   Moreover, in the absence of any persuasive argument from Defendants that the post-Complaint administration of involuntary psychotropic medications is properly before the court, I decline to consider whether summary judgment would be proper as to conduct Plaintiff has not yet properly raised in this litigation.   To the extent that this additional conduct is properly before the court, it appears that the same arguments set forth in this section would apply equally to the additional allegations related to the June 10, 2013 Involuntary Medication Order and the post-September 2013 Involuntary Medication Orders.

Mr. Bomprezzi would at minimum pose a serious risk of harm to others absent continued administration of involuntary medications. [*Id.*]. Mr. Bomprezzi was present at his hearing, and prison SCCF officials sought to allow Mr. Bomprezzi to exercise his right to appeal the Involuntary Medication Hearing Board's order providing for the continued administration of involuntary psychotropic medications. [#62 at ¶¶ 25-30 & #63 at 3; #64 at 1]. Based on the record before it, the court concludes that Defendants have accordingly met their burden in moving for summary judgment of pointing to an absence of evidence supporting Mr. Bomprezzi's due process claims. To avoid summary judgment, Mr. Bomprezzi was then required to provide at least some competent evidence to the contrary. In failing to provide any non-conclusory response to Defendants' Motion for Summary Judgment—much less citation to competent evidence providing at least some support  for all elements of Plaintiff's claim that his due process rights were violated—Plaintiff has failed to meet his burden of showing that there is any triable issue of material fact remaining before the court.

## CONCLUSION

For the foregoing reasons, this court respectfully RECOMMENDS that:

(1)     Defendants' Motion for Summary Judgment [#62] be GRANTED;

(2)     Plaintiff's claim related to his treatment at Colorado Mental Health Institute at Pueblo and Defendant Dr. Graham Hoffman, Dr. DeQuardo, and Dr. Pounds be DISMISSED WITHOUT PREJUDICE, for lack of subject matter jurisdiction;

(3)     Judgment be entered in favor of Defendants Julie Meeker and Lisa Toepp;

(4)     In alternative, to the extent the court finds jurisdiction over all claims as to all Defendants, judgment in favor of all Defendants be ENTERED; and

(5)     Each party will bear its own attorney's fees and costs.[7]

DATED: August 10, 2015                          BY THE COURT:


                                                /s/ Nina Y. Wang
                                                United States Magistrate Judge

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R.  Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d  573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52  F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's  order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs  waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).